## HARDY BURLINGHAM MINING CO. v. SAWYER et al.

Court of Appeals of Kentucky.
Jan. 16, 1953.

Benton, Benton & Luedeke, Newport, for appellant.

Don A. Ward, Hazard, for appellee.

MOREMEN, Justice.

This is an appeal from a judgment of the Perry Circuit Court which dismissed the petition of appellant, Hardy Burlingham

Mining Company, and upheld an award by the Workmen's Compensation Board to appellee, William M. Sawyer.

Appellee is a miner who worked for appellant under the provisions of the Workmen's Compensation Act, KRS 342.001 et seq.

On September 29, 1943, as a result of a mining accident, appellee lost the sight of his right eye. For this, he was adjudged twenty per cent permanently, partially disabled. He returned to work.

On May 7, 1948, appellee was loading coal when a mine car ran off the track and crushed him against the face of the coal bank. Both large bones in his right leg were broken. The leg refused to respond to treatment. The fractures were never successfully reduced although both screws and bone grafts were used. The leg bends upon manipulation; has a circumference of on and one-half inches less than the left leg, and requires a brace. Appellee walks with the aid of crutches.

Appellee filed claim for compensation against appellant. The Commissioner of Industrial Relations and the Subsequent Injury Fund were joined as defendants. The referee found that appellee's disability, as the result of the injury of May 7, 1948, was eighty per cent to the body as a whole plus twenty per cent disability for a former injury, or total disability. The referee was of opinion that the Subsequent Injury Fund was liable only when the last injury combined with the former injury or injuries produced a greater disability than would have resulted from the subsequent injury alone, and held that the injury to his leg would have prevented appellee from performing any type of manual labor regardless of whether or not he had lost an eye by a former injury, and concluded that the Subsequent Injury Fund was not liable for any of appellee's disability.

Upon review by the full board certain modifications of the referee's report were made and the board held that the last accident alone of appellee had caused him to suffer total and permanent disability. Appellant filed a petition for review in the Circuit Court where the award was upheld and the petition dismissed.

Appellant urges three grounds for reversal: (1) the board's finding of a twenty per cent permanent disability due to a back injury is not supported by the evidence; (2) appellant should not be held liable for compensation for a hundred per cent permanent disability; (3) Dr. Coldiron's deposition was not admissible.

We have been unable to find in the opinion and order of the full board where it fixed permanent disability due to a back injury at twenty per cent. The order does say, "We have carefully examined the evidence, and we find that there is quite sufficient evidence in the record to indicate that the last accident of the plaintiff, resulting in injuries to the leg and lower back, caused him to suffer total and permanent disability." But in the same opinion and order, and evidently in response to criticism of the referee's report, the board says this: "The defendant further complains of the mathematical calculations the Referee made in his opinion and award, in allowing a specific percentage of disability for the injury to the leg, to the back and to the eye. We do not undertake to discuss here whether or not these percentages are correct, because, as we have previously said, the evidence is such as to warrant a finding that the plaintiff, as a result of the last injury, was totally and permanently disabled."

We are therefore confronted only with the question of whether or not there was sufficient evidence to support the board's finding that appellee was totally and permanently disabled because of the second accident. Dr. Coldiron testified:

"Q. 49. Is this man, in his present condition, as you found it, able to do any work? A. No, sir.

"Q. 50. Are you in a position to state the extent of his disability? A. In my opinion he is totally and permanently disabled from performing any type of manual labor.

"Q. 51. What percentage of that disability is due to the loss of the eye and what is due to his other injuries? A. Well, just offhand I would say that I believe I would allow under 20% for the loss of the eye.

"Q. 52. And would you say that the other 80% is to the body as a whole? A. Yes.

"Q. 53. And is that disability permanent? A. In my opinion, yes.

"Q. 54. As far as work is concerned, he could work with one eye couldn't he? A. Yes, but not as well.

"Q. 55. But even if he had both eyes, tell the Board whether he could do any work? A. In my opinion the trouble with his leg would prevent him from performing any heavy manual labor."

We believe the board's award was supported by competent evidence.

■ In Department of Mines & Minerals v. Castle, Ky., 240 S.W.2d 44, 45, we said:

"Where the Board finds as a matter of fact upon competent evidence that a claimant is permanently and partially disabled, the award must be governed by the sections of the compensation act covering permanent partial disability, that is, Section 342.105 and Section 342.110, as amended. Under the latter section compensation for partial permanent injury to a member cannot exceed the amount allowable for the loss of the member. However, when the Board finds as a matter of fact upon competent evidence that a claimant is permanently and totally disabled it follows that the compensation awarded must be governed by the section of the statute governing awards for permanent total disability, that is 342.095.

"As stated by the Workmen's Compensation Board in its full board opinion 'in instances where the location of an injury is upon or within a member, but which extends beyond the member so that it adversely affects a workman's general ability to labor, or which limits his occupational opportunities to obtain the kind of work he is able to do, a recovery on the basis of the loss of a member is inadequate, since the disability is greater than the loss of a member and is not simply an injury to a member.' KRS 342.095, 342.105, 342.-110."

■ In the case at bar it was shown that appellee had been a miner for many years and that the only work he was able to perform was manual labor. He had successfully discharged his duties as a miner even though he had only one eye. His occupational opportunities, therefore, were destroyed by the second injury, after which he has been unable to work at all, and we are convinced that the board properly granted the award for permanent total disability under KRS 342.095. Appellee was awarded benefits during the period of total disability, but for a period not longer than 10 years after date of injury, nor in any case to exceed the maximum of $9,000. Appellant was given credits for payments theretofore made on account of both injuries.

■ Appellant complains finally that the deposition of Dr. Coldiron was taken ten days after the allowed time had expired and was filed twelve days after the expiration date. It is true that appellee's time for completing his evidence by deposition expired March 15, 1950. However, on March 20, 1950, he filed with the Workmen's Compensation Board a motion for extension of time, that motion was sustained and appellee was given an additional fifteen days by an order entered by the board on April 5, 1950. The deposition of Dr. Coldiron was taken on March 25, 1950, therefore, the deposition was taken within the time allowed by the extension. We do not believe the board abused its discretion even though the order was entered some time after the motion for an extension had been made.

The judgment is affirmed.