## Marshall v. Octavia J. Coal Mining Company et al.

(Decided Jan. 23, 1934.)

G. R. BLACKBURN for appellant.
CALDWELL & GRAY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Coleman Marshall and his employer, Octavia J. Coal Mining Company, had accepted the provisions of the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.). On August 2, 1927, Marshall, while working as a brakeman on a mine motor, received an injury necessitating the amputation of his right foot about five inches above the ankle joint. With the approval of the Workmen's Compensation Board, Marshall and his employer settled on the basis of "loss of a foot," and the employer paid him $12 a week for a period of 125 weeks following the accident.

On July 31, 1931, Marshall made a motion before the board to reopen the case on the ground that by mistake he was awarded compensation for only the loss of a foot, whereas he suffered more than the loss of a foot, and his injury falls within the category of "all other cases of permanent partial disability" as provided in the statute, and is compensable as such. After hearing the evidence and delivering a well-considered opinion, the board, in addition to other findings of fact not material, found that Coleman had lost only his foot, and ruled as a matter of law that, where it is definitely shown that only the foot is injured, and amputation is

made at "the point of election" or five inches above the ankle so as to provide a cushion for the use of an artificial limb, and to increase the injured's future usefulness, such amputation amounts only to the removal of the foot as covered by the specific schedule in section 18 of the act. On these grounds the board denied the application for further compensation. On petition for review to the circuit court the action of the board was affirmed. Marshall appeals.

Section 4899, Ky. Stats., after fixing the compensation for the loss of a foot at 65 per cent. of the average weekly wages during 125 weeks, and for the loss of a leg at 65 per cent. of the average weekly wages during 200 weeks, and the compensation for other specific injuries, provides:

"In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employee and age at the time of injury; the compensation paid therefor shall be sixty-five per cent. [65%] of the average weekly earnings of the employee, but not less than five dollars [$5.00] nor more than twelve dollars [$12.00], multiplied by the percentage of disability caused by the injury, for such period as the board may determine, not exceeding 335 weeks nor a maximum sum of four thousand dollars [$4,000.00]."

In support of his position that he is entitled to additional compensation, appellant relies upon the case of Mills v. Mills & Connelly, 214 Ky. 675, 283 S. W. 1010, where we held under the facts there present that an employee, whose foot was amputated at a point seven and one-half or eight inches above the ankle, had suffered more than the loss of a foot, and less than the loss of a leg, and was entitled to compensation under the general provision of the statute. In that case, however, there was no evidence that in order to get the best results for the injured employee it was necessary to make the amputation so far above the ankle. Here the situation is different. The uncontradicted evidence of Dr. John

White McCammon, a distinguished orthopedic surgeon of long experience on the point in question, is as follows:

"Q. At what point, with reference to the ankle joint itself, is the amputation properly performed? A. If the entire foot must be removed, amputation should be done at what is considered the point of election; about the middle of the lower leg; in other words, through what the laymen call, middle of the 'shin' bone.

"Q. Assuming that the plaintiff, Coleman Marshall has sustained an amputation at the point five inches above the ankle joint, would you say that that is, in surgery a foot amputation? A. Yes, sir.

"Q. Why is it necessary, in a foot amputation, to sever the bone this far above the ankle joint? A. For two reasons; first, an amputation lower than this, in a large number of cases, will result in a painful scar, due to the fact that a very thin flap, only, can be obtained to cover the stump and make a cushion. Second, an amputation below the point of election gives the stump too long to be completely fitted with an artificial appliance.

"Q. If the bone were severed closer to the ankle joint, than you have described, would the resulting disability to the patient be greater or less than if the amputation were performed at the point of election? A. Greater; for the reasons I have just stated.

"Q. So that, when a man sustains the loss of a foot, the less impairment that can result, is through amputation at the point of election? A. Yes, sir.

"Q. And by amputation at that point, you get the maximum use of the artificial foot and limb? A. Yes, sir.

"Q. If the plaintiff in this case had had the amputation performed closer to the ankle joint, do you then say his disability would have been greater? A. It would have been greater.

"Q. And greater than it is at the present? A. Yes, sir.

"Q. This amputation, if it is five inches above the ankle joint, results in the least disability that an amputation can cause? A. Yes, sir."

It may be conceded that, if appellant's leg above the ankle had been injured, and by reason thereof it was necessary to amputate at a place higher than was reasonably necessary to get the best results for an ordinary amputation of a foot, or only his foot had been injured and the point of election was arbitrarily selected at a place higher than was reasonably necessary, a different case would be presented. Compensation for disability is what is aimed at by the statute. In the very nature of things an ankle does not make a proper stump, and amputation of the foot below the ankle will not get the best results. The act plainly contemplates amputation "at or above" the ankle. Section 4897, Ky. Stats. "Above" is an indefinite term, and its meaning must turn on the necessities of the case. The evidence is that the disability is increased by amputation near the ankle, and decreased by amputation higher up, and that the proper place, in ordinary parlance, is at the "middle of the shin bone." Were we to rule that amputation should always be made at a point just above the ankle, there would be no incentive to get the best results for the injured employee, and the employer would be penalized for making an honest effort to lessen the disability. After a careful consideration of the question, we are constrained to agree with the Compensation Board that, where there is no injury to the leg, and only the foot is injured, amputation of the foot at a point five inches above the ankle, in order to get the best results for the injured employee, constitutes only the loss of a foot and is compensable as such, and not under the general provisions of the statute.

Judgment affirmed.

Whole court sitting.